# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

---------------------------------------------------------

SHIVA STEIN,              :
                          :
       Plaintiff,         :   Civil Action No. _____
                          :
v.                        :   **COMPLAINT FOR VIOLATIONS OF**
                          :   **SECTIONS 14(a) AND 20(a) OF THE**
WELBILT, INC., CYNTHIA M. :   **SECURITIES EXCHANGE ACT OF**
EGNOTOVICH, DINO J. BIANCO, JOAN K. :   **1934**
CHOW, JANICE L. FIELDS, BRIAN R. :
GAMACHE, WILLIAM C. JOHNSON, and :   **JURY TRIAL DEMANDED**
ANDREW LANGHAM,           :
                          :
       Defendants.        :
---------------------------------------------------------:

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.  This is an action brought by Plaintiff against Welbilt, Inc. ("Welbilt" or the "Company") and the members of Welbilt's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Welbilt and Middleby Corporation and its affiliates ("Middleby").

2.  Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on May 28, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to the Company's stockholders.  The

Registration Statement recommends that the Company's stockholders vote in favor of a proposed transaction whereby Mosaic Merger Sub, Inc., a wholly-owned subsidiary of Middleby, will merge with and into Welbilt, with Welbilt surviving as an indirect wholly-owned subsidiary of Middleby (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Welbilt stockholder will receive 0.1240 shares of Middleby common stock (the "Merger Consideration").

3.     As discussed below, Defendants have asked Welbilt's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Registration Statement contains materially incomplete and misleading information concerning the prospective information of the Company and the analyses performed by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley"), in support of its fairness opinion.

4.     It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Welbilt's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6.        This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.        Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.        Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Welbilt is incorporated in this District.

**PARTIES**

9.        Plaintiff is, and has been at all relevant times, the owner of Welbilt stock and has held such stocks since prior to the wrongs complained of herein.

10.       Individual Defendant Cynthia M. Egnotovich has served as a member of the Board since 2008 and is the Chairperson of the Company.

11.       Individual Defendant Dino J. Bianco has served as a member of the Board since 2015.

12.       Individual Defendant Joan Chow has served as a member of the Board since 2012.

13.       Individual Defendant Janice L. Fields has served as a member of the Board since 2018.

14.       Individual Defendant Brian R. Gamache has served as a member of the Board since 2017.

15.     Individual Defendant William C. Johnson has served as a member of the Board since 2018 and is the Company's President and Chief Executive Officer.

16.     Individual Defendant Andrew Langham has served as a member of the Board since 2016.

17.     Defendant Welbilt a Delaware corporation and maintains its principal offices at 2227 Welbilt Boulevard, New Port Richey, Florida 34655.  The Company's stock trades on the New York Stock Exchange under the symbol "WBT."

18.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Transaction

20.     Welbilt designs, manufactures, and supplies foodservice equipment for commercial foodservice market worldwide.  The Company offers commercial upright and undercounter refrigerators and freezers, blast freezers and chillers, and cook-chill systems under the Delfield brand; and walk-in refrigerators, coolers and freezers, and prefabricated cooler and freezer panels under the Kolpak brand.  It also provides traditional, combination, convection, conveyor, and rapid-cooking ovens, and range and grill products under the Convotherm, Garland, Lincoln, and Merrychef brands; fryers and frying systems under the Frymaster brand; and steam equipment under the Cleveland brand. In addition, the company offers cafeteria and buffet equipment stations, bins, boxes, warming cabinets, warmers, display and deli cases, and insulated and refrigerated salad and food bars under the Delfield, Merco, and other brand names; beverage dispensers, blended ice machines, ice/beverage dispensers, beer coolers, post-mix dispensing valves,

4

backroom equipment, and support system components and related equipment; ice machines under the Manitowoc and other brand names; coffee equipment under the Crem brand name; and other beverage-related products under the Multiplex and Manitowoc brand names.  Further, it provides after-market parts, and installation and start-up, and preventative maintenance services; spare parts supply for Welbilt products under the KitchenCare brand; designed kitchens under FitKitchen brand; and KitchenConnect, a cloud based-application.  It supplies its products to full-service restaurants, quick-service restaurant chains, hotels, resorts, cruise ships, caterers, supermarkets, convenience stores, hospitals, schools, and other institutions through dealers and distributors.  The Company was formerly known as Manitowoc Foodservice, Inc. and changed its name to Welbilt, Inc. in February 2017.  Welbilt was founded in 1864 and is headquartered in New Port Richey, Florida.

21.     On April 21, 2021, the Company and Middleby jointly announced the Proposed Transaction:

> Elgin, IL and New Port Richey, FL – The Middleby Corporation (NASDAQ: MIDD) and Welbilt, Inc. (NYSE: WBT) have entered into a definitive agreement under which Middleby will acquire Welbilt in an all-stock transaction, enhancing the Middleby Commercial Foodservice platform with an attractive portfolio of products, brands and technologies. This transaction will bring together two complementary businesses, accelerate the Middleby growth strategy into key markets globally and increase core capabilities in highly attractive segments.
>
> The combined company will have approximately $3.7 billion in combined 2020 sales, 73% of which will come from the Commercial Foodservice segment. With a strong balance sheet and robust cash generation, Middleby will be well positioned and capitalized to support significant R&D and future acquisition opportunities. Middleby has a long track record of successfully integrating businesses, having completed over 20 acquisitions since 2018, and has a history of driving efficiencies in acquired companies.

<u>Compelling Strategic Rationale</u>

- Creates a broad Commercial Foodservice Equipment platform with enhanced ability to serve customers through a combination of distinct but complementary portfolios with leading brands and broad geographic footprint
- Strengthens customer value proposition across hot-side, cold-side, beverage, technology and aftermarket support services across the globe
- Transaction accelerates R&D and investment into the value-added technologies and services of the future, including ventless cooking, controls, automation and connectivity
- $100 million of anticipated annual cost synergies associated with the transaction to be fully realized by year three, with additional potential from cross-selling opportunities and greater product development not yet quantified; Welbilt stand-alone Business Transformation Program annual improvement of $20 million is incremental
- All-stock transaction maintains the Middleby balance sheet flexibility, with significant expected combined free cash flow to support and grow the business
- Expected net leverage at close of ~3.0x, to be reduced to approximately ~2.0x by the end of 2022
- A landmark transaction in the Middleby long-standing strategy of acquiring, integrating and operating complementary and synergistic businesses

"Today's announcement represents a milestone event for Middleby, Welbilt and the Commercial Foodservice Equipment industry. The combination of our two great companies creates a leading player with a comprehensive product line, global footprint and advanced technologies and solutions that are well positioned to serve our rapidly changing customer needs and capitalize on emerging industry trends. The acquisition of Welbilt is a transformational opportunity for Middleby and a compelling combination that will benefit all of our stakeholders," said Middleby CEO Timothy FitzGerald. "We are excited to welcome the Welbilt team and we will benefit from the highly talented group they have assembled."

William Johnson, CEO of Welbilt, said "We are pleased to combine with Middleby to offer our customers a broad and innovative portfolio of products and technologies. This transaction will allow Welbilt to accelerate our strategic development and represents an outstanding opportunity for Welbilt shareholders to realize an attractive value and participate in the future value creation of the combined organization. I am pleased to be joining the Middleby

Board of Directors upon closing of the transaction to support a successful combination of the businesses."

Transaction Structure

Under the terms of the agreement, Welbilt shareholders will receive a fixed exchange ratio of 0.1240x shares of Middleby common stock for each share of Welbilt common stock in an all-stock transaction, with an implied enterprise value of $4.3 billion. Based on Middleby's volume-weighted average price during the 30 consecutive trading days ending April 20, 2021 (Middleby's 30-day VWAP), the offer price represents a 28% premium to Welbilt's 30-day VWAP. Upon closing, Middleby shareholders will own approximately 76 percent and Welbilt shareholders will own approximately 24 percent of the combined company on a fully diluted basis.

The Boards of both companies have unanimously approved the transaction. In addition, Carl C. Icahn (and affiliates), Welbilt's largest shareholder with an 8.4% ownership position, has entered into a support agreement in favor of the transaction.

Governance and Management

Following closing, Timothy FitzGerald will continue as CEO and as a member of the Middleby Board of Directors. Bryan Mittelman will continue to serve as Middleby's CFO. Middleby will expand its Board to include two new directors from the Welbilt board, Chairperson Cynthia Egnotovich and William Johnson.

Financing and Expected Timing

Middleby intends to refinance Welbilt's existing debt through its committed Senior Secured Facility. Based on the expected pro forma leverage ratio at closing, the interest on the incremental financing would be approximately L + 162.5 bps. The transaction is expected to close in late 2021, subject to customary closing conditions, including regulatory and Middleby and Welbilt shareholder approvals.

Advisors

Guggenheim Securities, LLC served as financial advisor to Middleby. Skadden, Arps, Slate, Meagher & Flom LLP served as legal counsel.

Morgan Stanley & Co. LLC served as financial advisor to Welbilt.
Gibson, Dunn & Crutcher LLP served as legal counsel.

* * *

22.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Welbilt's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**     **The Materially Incomplete and Misleading Registration Statement**

23.     On May 28, 2021, Welbilt and Middleby jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.   The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

24.     The Registration Statement fails to provide material information concerning financial projections prepared by management and relied upon by Morgan Stanley in its analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.  The Registration Statement indicates that in connection with the rendering of its fairness opinion, management prepared certain non-public financial forecasts (the

"Company Projections") and provided them to the Board and Morgan Stanley with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that management provided to the Board and its financial advisor.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25.    For the Middleby Base Case, Middleby View of Welbilt Integrated Case, and Middley View of Welbilt Standalone Case, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2021 through 2025: Adjusted EBITDA before SBC; Adjusted EBITDA after SBC; EBITA; and Free Cash Flow but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26.    For the Welbilt Management Forecasted Financial Information, the Welbilt View of Middleby Management Forecasted Financial Information, and the Welbilt Consensus Forecasted Financial Information of Welbilt, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2020 through 2025: Adjusted EBITDA and Unlevered Free Cash Flows, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

27.    The Registration Statement further fails to disclose net income projections for either company, even though the metric was referenced throughout the filing.

28.    When a company discloses non-GAAP financial measures in a registration statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29.    The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

30.    Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

31.    With respect to Morgan Stanley's *Public Trading Comparables Analyses* for Welbilt and Middleby, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by Morgan Stanley in the analyses.

32.    With respect to Morgan Stanley's *Illustrative Present Value of Future Share Price Analysis*, the Registration Statement fails to disclose: (i) Morgan Stanley's basis for applying the illustrative NTM enterprise value to EBITDA multipoles of 3.50x to 5.00x; (ii) the assumed amount of net cash; (iii) the assumed minority interest as of the relevant year-end; (iv) the projected year-end fully diluted shares of Welbilt common stock outstanding; and (v) the inputs underlying the discount rate of 10.0%.

33.    With respect to Morgan Stanley's *Welbilt Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the terminal values for Welbilt as calculated by Morgan Stanley; (ii) the inputs and assumptions underlying the use of terminal growth rates of 2.5% to 3.5%; (iii) the inputs and assumptions underlying the discount rates ranging from 8.8% to 10.0%; and (iv) the number of fully diluted outstanding of Welbilt common stock as of March 31, 2021.

34.    With respect to Morgan Stanley's *Middleby Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the terminal values for Middleby as calculated by Morgan Stanley; (ii) the inputs and assumptions underlying the use of terminal growth rates of 2.5% to 3.5%; (iii) the inputs and assumptions underlying the discount rates ranging from 7.2% to 8.9%; and (iv) the number of fully diluted outstanding of Middleby common stock as of March 31, 2021.

35.    With respect to Morgan Stanley's *Welbilt Discounted Equity Value Analysis*, the Registration Statement fails to disclose: (i) the basis for applying a range of AV/NTM EBITDA

multiples of 11.0x to 13.0x to Welbilt financial estimates; and (ii) the inputs and assumptions underlying the use of discount rate 13.0%.

36.     With respect to Morgan Stanley's *Middleby Discounted Equity Value Analysis*, the Registration Statement fails to disclose: (i) the basis for applying a range of AV/NTM EBITDA multiples of 13.0x to 15.0x to Middleby financial estimates; and (ii) the inputs and assumptions underlying the use of discount rate 9.0%.

37.     With respect to Morgan Stanley's *Precedent Premia Analysis*, the Registration Statement fails to disclose: (i) the transactions observed by Morgan Stanley in the analysis; (ii) the premia for those transactions observed; and (iii) the basis for selecting a reference premium range of 10% to 30%.

38.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

39.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement

which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

41.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

42.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

43.     Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately

involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

44.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

45.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46.     The Individual Defendants acted as controlling persons of Welbilt within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Welbilt, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Welbilt, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

47.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Welbilt, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Registration Statement.

49.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 2, 2021                        **RIGRODSKY & LONG, P.A.**

                                           By:  */s/ Gina M. Serra*
                                                Seth D. Rigrodsky (#3147)
                                                Gina M. Serra (#5387)
                                                Herbert W. Mondros (#3308)
                                                300 Delaware Avenue, Suite 210
**OF COUNSEL:**                                 Wilmington, DE 19801
                                                Telephone: (302) 295-5310
**MELWANI & CHAN LLP**                          Facsimile: (302) 654-7530
Gloria Kui Melwani                              Email: sdr@rl-legal.com
1180 Avenue of the Americas, 8th Fl.            Email: gms@rl-legal.com
New York, NY 10036                              Email: hwm@rl-legal.com
Telephone: (212) 382-4620
Email: gloria@melwanichan.com                   *Attorneys for Plaintiff*

17